**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

June 12, 2020

VIA ECF

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

The government shall respond by June 22, 2020. A hearing is scheduled for June 25, 2020 at 2:00 p.m. regarding defendant's motion for sentencing reduction/compassionate release. The call-in information for this hearing is:
  Dial-in:  (888) 363-4749
  Access Code:  3667981
SO ORDERED.

P. Kevin Castel
United States District Judge
6/15/2020

**Re:   United States v. Henry Lopez**
       **03 Cr. 1492 (PKC)**

Dear Judge Castel,

I write to request that the Court grant Henry Lopez compassionate release, pursuant to 18 U.S.C. § 3582(c), and sentence him to time served, or in the alternative direct that he be released immediately to home confinement for the remainder of his sentence. Mr. Lopez has served all but seven months of his 20-year sentence. Per the BOP, his release date is set for February 21, 2021. Mr. Lopez is currently housed at FCI Butner, and has a date for release to an RRC in Miami on August 19, 2020.

As the Court noted in the order denying Mr. Lopez's motion for reduction of sentence under section 404 of the First Step Act, Mr. Lopez has successfully completed an "impressive number of programs" while incarcerated. ECF No. 181.

Mr. Lopez is aware that the Court, in exercising its discretion pursuant to §3553(a) last year, declined to reduce his sentence. However, three things have changed. (1) Mr. Lopez has now served almost all of his sentence including the past three months under very difficult conditions of confinement; (2) Per the BOP, the safety of the public does not preclude his release to a halfway house in a mere two months; (3) the COVID-19 pandemic presents an "extraordinary and compelling reason" which neither the Court nor anyone else predicted last July.

Although Mr. Lopez does not have a documented medical condition that makes him particularly vulnerable to the virus, the risks posed to him by COVID-19 in a jail

setting are still real.[1] The virus has arrived at FCI Butner, where Mr. Lopez is currently incarcerated. Multiple inmates and staff members have tested positive for the virus.[2]

When he is released, Mr. Lopez will live with his partner, Willary Ramos, and their daughter in Miami. Back home with his family is a far safer living environment than jail during the pandemic. Public safety is also best served by thinning the prison population by releasing appropriate candidates early.

### The COVID-19 Pandemic

The United States and the world are in the midst of a serious and urgent public health crisis. On March 11, 2020, the World Health Organization officially classified COVID-19 as a global pandemic.[3]

Jails are particularly dangerous settings for the spread of COVID-19. Public health experts agree that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[4]

The correctional facility in Butner, North Carolina is a cluster of facilities, including Butner FMC, Butner Low FCI, Butner Medium I FCI and Butner Medium II FCI. Among the four facilities, as of today, almost 900 inmates have tested positive. There are currently 20 staff members who have tested positive and are actively sick. At Butner Low FCI, 9 inmates and one staff member have died. At Butner Medium I

---

[1] Hundreds of Young Americans Have Now Been Killed by the Coronavirus, Data Shows, Washington Post (Apr. 8, 2020) (available at https://www.washingtonpost.com/health/2020/04/08/young-people-coronavirus-deaths/ (last visited June 12, 2020)).

[2] Federal Bureau of Prisons, COVID-19 (available at www.bop.gov/coronavirus/ (June 12, 2020)).

[3] WHO Characterizes COVID-19 as a Pandemic, World Health Organization (Mar. 11, 2020) (available at https://bit.ly/2W8dwpS (last visited June 12, 2020)).

[4] Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States, (Mar. 2, 2020) (available at https://bit.ly/2W9V6oS (last visited June 12, 2020)).

**Motion for Compassionate Release**　　　　　　　　　　　　　　　　**Page 3 of 6**
**Henry Lopez**

FCI, another 9 inmates have died. Nationwide, as of June 12, 2020, 80 inmates have died.[5]

The rapid proliferation of the virus within BOP comes as no surprise. "[C]onditions of confinement—sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere." United States v. Haney, No. 19 Cr. 541, 2020 WL 1821988, at *6 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.). "Jails and prison are powder kegs for infection. People in jails and prisons cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment." United States v. Skelos, No. 15 Cr. 317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) (Wood, J.).

In short, Mr. Lopez is not safe in the BOP's custody, or specifically at FCI Butner and he should serve the remainder of his sentence in a safer location, his family home.

### **Compassionate Release is Appropriate Due to the Pandemic**

**I.     Standard**

The Court should grant Mr. Lopez compassionate release under 18 U.S.C. § 3582 and sentence him to time served, with home confinement and supervised release. The First Step Act specifically expanded the power of district courts to grant compassionate release. Under this section of the First Step Act, a sentencing court,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

---

[5] Federal Bureau of Prisons, COVID-19 (available at www.bop.gov/coronavirus/ (June 12, 2020)).

The relevant Sentencing Commission policy statement defines "extraordinary and compelling reasons" to include a defendant's medical conditions, age, family circumstances, and "other reasons." See U.S.S.G. § 1B1.13, Application Note 1. The Commission also requires that the "defendant is not a danger to the safety of any other person or to the community." Id. The First Step Act sought to expand the use of compassionate release by shifting greater discretion to district courts to determine what constitutes "extraordinary and compelling" reasons for a sentence reduction under the statute.

As a result, by the plain terms of the statute, this Court's authority to reduce a sentence pursuant to this provision is expansive: it may reduce a defendant's prison sentence after considering the 18 U.S.C. § 3553(a) factors if it finds "extraordinary and compelling" reasons for a reduction; that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the defendant does not present a danger to the community. See 18 U.S.C. § 3582(c)(1)(A); see also, e.g., United States v. Wong Chi Fai, No. 93 Cr. 1340 (RJD), 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019). Nothing more is required.

District courts have reduced sentences for a variety of reasons—even if the reductions are opposed by the Bureau of Prisons and even if the reasons do not fit neatly into the Sentencing Commission's specifically enumerated reasons. See, e.g., United States v. Young, No. 00 Cr. 02, 2020 WL 1047815, at *5-6 (M.D. Tenn. Mar. 4, 2020) (granting compassionate release and rejecting government argument that defendant's motion should be denied because he did not meet the medical criteria in U.S.S.G. § 1B1.13, finding that "district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release"); United States v. Beck, No. 13 Cr. 186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (finding that "[w]hile the [Sentencing Commission's] old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" and granting release based on BOP's mismanagement of defendant's medical care). While compassionate release must be "consistent" with the Sentencing Commission's guidance, this Court is not limited to the specific enumerated examples set forth by the Commission in finding "extraordinary and compelling" reasons for release. Many courts have considered and granted compassionate release during the instant pandemic. See, e.g., United States v. Field, No. 18 Cr 246, ECF No. 38 (May 4, 2020) (Oetken, J.); United States v. William Knox, No. 15 Cr. 445, ECF No. 1088 (S.D.N.Y. Apr. 10, 2020) (Englemeyer, J.); United States v. Wilson Perez, No. 17 Cr. 513, ECF No. 98, (S.D.N.Y. Apr. 1, 2020) (Torres, J.); United States v. Darnell Jackson, No. 15 Cr. 135 (ENV), ECF No. 208 (E.D.N.Y. Apr. 6, 2020); United States v. Sawicz, No. 08 Cr. 287 (ARR), 2020 WL 1815851, at *2 & n.2 (E.D.N.Y. Apr. 10, 2020).

### II.  Mr. Lopez Exhausted His Administrative Remedies.

On May 12, 2020, defense counsel filed a request for compassionate release on behalf of Mr. Lopez to the warden of FCI Butner. See Exhibit A. Thirty days have passed without an answer from the warden. On May 19, via email, I received the following answer from an attorney at FCI Butner.

"My name is Mallory Storus, and I am an Attorney at FCC Butner responding to requests for home confinement eligibility determinations on behalf of Unit Team and the Warden. We are in receipt of your request sent May 12, 2020, on behalf of inmate Lopez, Reg. No. 51953-054.

Unit Team has assessed inmate Lopez for home detention eligibility under the CARES Act. As you may know, eligibility for home confinement under the CARES Act is based upon the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and a list of discretionary factors. Those factors include, but are not limited to: the recidivism risk score (with only minimum inmates eligible at this time), any history of violence, the status of the COVID-19 outbreak at the individual facility, and any complicating medical conditions that may make him more susceptible to serious complications if he were to contract COVID-19.

Unit Team has assessed Mr. Lopez and deemed him ineligible for transfer to home confinement at this time. He is a medium security classification, Care 1, and has a medium recidivism risk score. He also has past violence. I would note as well that at this time, there are no cases of COVID-19 within the general inmate population where inmate Lopez is housed.

Though he is ineligible for transfer to home confinement, he is awaiting placement at a halfway house and a date."

In follow-up communication with Mr. Lopez's unit manager, Tammy Rakfeldt, I was advised on May 20, 2020, that the date for Mr. Lopez's transfer to a halfway house was set for August 19, 2020. Notably, since this response on May 19, according to the BOP, all four facilities at Butner now have inmates who are positive for COVID-19.

Thus, Mr. Lopez has exhausted his administrative remedies.

### III.  Mr. Lopez Should be Released Immediately to Home Confinement.

"The COVID–19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." United States v. Hernandez, No. 18 Cr. 834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (Engelmeyer, J.). "Confined to a small cell where social distancing is impossible," an inmate like Mr. Lopez "cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." United States v. Perez, No. 17 Cr. 513, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) (Torres, J.).

Moreover, the pandemic has altered the level of punishment that people experience in federal prisons. Since the inception of the pandemic, the punitive aspects of prison life have skyrocketed and the rehabilitative opportunities have been severely diminished. Although prior to the "modified operations" and nationwide lockdown enacted by the BOP because of the pandemic and then in response to protests following the death of George Floyd, Mr. Lopez had participated in an "impressive number of programs," such programming is no longer possible. Thus, Mr. Lopz is being punished even more severely than anyone could have anticipated at the time of his sentencing. The fact that Mr. Lopez has spent months in a locked-down setting—with no end in sight—coupled with the pervasive fear that prisoners are now living with, is further reason to find that Mr. Lopez has been sufficiently punished.

Mr. Lopez stands ready to follow the rules regarding home incarceration and supervised release. He will stay at home with his romantic partner and child. Ms. Ramos has been in contact with the probation department in Miami and confirms that Mr. Lopez can safely quarantine at home, while protecting himself, his family, and the community.

## Conclusion

For the reasons detailed above, the Court should immediately grant Mr. Lopez compassionate release and sentence him to time served, or in the alternative order that he be released immediately to home confinement as a condition of his supervised release, pursuant to 18 U.S.C. § 3582(c)(1)(A). Doing so is consistent with the applicable statutes, Mr. Lopez's safety and the safety of the public.

Respectfully submitted,

/s/
Jennifer L. Brown
Attorney-in-Charge
Federal Defenders of New York.
52 Duane Street, 10th Floor
New York, NY 10007
Cell: 646 763 1420

cc:   Dominic A. Gentile, via email
      Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Southern District

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 15, 2020

<u>VIA EMAIL</u>
Warden
FCI Butner Medium II
Old NC Hwy 75
Butner, NC
By email to: BTF/ExecAssistant@bop.gov

**Re:   Henry Lopez, 51953-054**
**Request for Home Confinement**

Dear Warden,

I write on behalf of inmate Henry Lopez, Reg. No. 51953-054 to request that the Bureau of Prisons immediately transfer Mr. Lopez to home confinement, pursuant to 18 U.S.C. § 3624(c), as expanded by the CARES Act. Given the extraordinary and compelling circumstances created by the ongoing coronavirus pandemic, I am filing this for Mr. Lopez. Mr. Lopez's release date is scheduled for February 13, 2021 – which means he has less than a year remaining on his sentence. It's my understanding that he is scheduled to be transferred to a half-way house in August 19, 2020 and that probation in the Southern District of Miami has already conducted a home visit and completed its inspection report.

The risks of death posed by coronavirus to the population at large, and the in particular, posed to the federal prison population, are extraordinary and compelling.

If released on home confinement, Mr. Lopez will live with Willary Ramos and their nineteen year-old daughter, Chelsey Lopez. **The release address is 9591 Fountainbleau Blvd, Apt. 407, Miami Florida.** Ms. Ramos can be reached at (305) 546-5173.

Mr. Lopez has earned his GED while in custody, worked steadily in the UNICOR program, and completed a non-residential drug treatment program, as well as many other vocational programs. He is currently enrolled in the RDAP program. He has a very good institutional record and has had no incidents of any kind since 2018.

Mr. Lopez is eligible to serve out the remainder of his sentence in home confinement, and you should exercise your discretion to release him immediately. Under 18 U.S.C. § 3624(c), "[t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to

1

and prepare for the reentry of that prisoner into the community." While the prison is on modified lockdown, Mr. Lopez's ability to prepare for reentry has been severely hampered.

The BOP's authority under § 3624(c) may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. As directed, the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c). Thus, by its very terms, release under § 3624(c) is not supposed to be discretionary—the statute commands that the Bureau of Prisons "shall" use community confinement when persons become eligible. See id.

Congress and the President authorized an expansion of the time periods laid out in section 3624, via the passage of the Coronavirus Aid, Relief, and Economic Security (CARES) Act:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Coronavirus Aid, Relief, and Economic Security (CARES) Act, H.R. 748, 116th Cong. § 12003(2). In turn, the Attorney General made that finding and "expand[ed] the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." See Memorandum dated April 3, 2020,

All three branches of government have recognized the importance of expanding the use of home confinement during the COVID-19 pandemic. The Attorney General of the United States specifically directed the increased use of home confinement: "One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances." See Memorandum dated March 26, 2020.

The expansion of home confinement, as one mechanism to decrease the federal prison population, cannot come fast enough. Federal prisoners are dying. Indeed, to date, 50 prisoners have died.

"Prisons are tinderboxes for infectious disease." See United States v. Jeremy Rodriguez, No. 03 Cr. 271 (AB), ECF Docket No. 135 (E.D. Pa. Apr. 1, 2020) (granting inmate's compassionate release motion and collecting research explaining the greater risk of infectious disease spread in detention facilities). By nature, prisons keep people together, and use communal spaces for living and eating—which is precisely the opposite of the guidance from the Center for Disease Control (CDC) to socially distance from others. See https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

Thus, Mr. Lopez should be sent to home confinement immediately, pursuant to 18 U.S.C. 3624(c). On home confinement, Mr. Lopez will be able to isolate himself and take the same precautionary measures that all Americans are taking: frequent hand washing, sanitizing his living space, and seeking medical care if necessary. None of these precautions are available in prison.

In the alternative, Mr. Lopez requests release to home confinement pursuant to the compassionate release provision of the First Step Act. Compassionate release is available when "extraordinary and compelling reasons warrant such a reduction." See 18 U.S.C. § 3582(c)(1)(A)(i). The risks of death posed by coronavirus to the population at large, and the in particular, posed to the federal prison population, are just such reasons.

Please inform me of your decision on this request as soon as you can. We stand ready to provide any additional information about Mr. Lopez's reentry plan that your office seeks. Thank you for your consideration.

Sincerely,

/s/
Jennifer L. Brown
Attorney in Charge
Federal Defenders of New York
(c): 646 763 1420